1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICK JOHNSON, | Case No.  1:13-cv-01171-LJO-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATION RECOMMENDING THIS ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM |
| v. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | (ECF No. 10) |
| Defendants. | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

### I.

### PROCEDURAL HISTORY

Plaintiff Frederick Johnson, proceeding pro se and in forma pauperis, filed this employment discrimination action on July 26, 2013.  (ECF No. 1.)  The complaint was screened and dismissed with leave to amend on August 28, 2013.  (ECF No. 4.)  Plaintiff filed a first amended complaint on November 19, 2013, which was screened and dismissed with leave to amend on December 2, 2013.  (ECF Nos. 8, 9.)  Currently before the Court is Plaintiff's second amended complaint, filed January 2, 2014.  (ECF No. 10.)

///

///

///

1

**II.**

**SCREENING REQUIREMENT**

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must dismiss a case if at any time the Court determines that the complaint fails to state a claim upon which relief may be granted.   In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).   A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."   Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"   Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).   Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.   Iqbal, 556 U.S. at 678.

**III.**

**COMPLAINT ALLEGATIONS**

Plaintiff's second amended complaint is substantially the same as his first amended complaint.   This action is brought against Defendants California Department of Corrections and Rehabilitation ("CDCR"); Valley State Prison ("VSP"); Warden Tina Hornbeak; Associate Warden Charles Callahan; Lieutenants B. McGraw and N. Schertz, and G. Hernandez; Correctional Food Manager Muhammad Mohktar; Assistant Correctional Food Manager G. Hernandez; and Correctional Officers S. Nitske and T. Price alleging retaliation in violation of the First Amendment, 42 U.S.C. § 2000e-3(a), and California Government Code §§ 8547 et al.; disparate treatment in violation of 42 U.S.C. 2000e-2(a); and violations his right to due process

2

1    under the Fourteenth Amendment.[1]

2         Plaintiff worked as a supervising cook at VSP for 18 years.  (Second Am. Compl. 2, ECF
3    No. 10.)  In 2007, Plaintiff began documenting and keeping records of unnecessary labor costs,
4    food waste, spoilage and contamination of food.   Plaintiff reported the violations to his
5    supervisor, Defendant Mohktar, and suggested ways to minimize labor costs.  Plaintiff's reports
6    and suggestions were ignored.  Plaintiff was afraid of retaliation, so he sent two anonymous
7    memorandums to state investigators on October 30, 2008.  Nothing was done in response to these
8    anonymous reports.  (Id. at ¶ 11.)

9         In August of 2008, Plaintiff was given a letter by an inmate who suffers from mental
10   illness.  The letter, which was written by a different inmate, stated that Plaintiff had raped and
11   assaulted her in 2007 and 2008.  The letter implicated other staff members of wrong doing and
12   accused a white staff member of assaulting her in front of two other officers.  Plaintiff turned the
13   letter over to Defendant McGraw.   Plaintiff also provided copies of the letter to Defendant
14   Mohktar, Lt. Bergerson, Sgt. Heffington and other staff members.   The inmate who accused
15   Plaintiff of this conduct was in the mental health unit on suicide watch at this time.  Plaintiff was
16   informed that the inmate would be transferred to Central California Women's Facility the
17   following day.  (Id. at ¶ 12.)

18        In December 2008, Plaintiff received a letter stating that he was under investigation due to
19   the allegations in the letter.  (Id. at ¶ 13.)  Plaintiff was the only African American individual
20   mentioned in the letter and was the only individual interviewed or placed under investigation.
21   (Id. at ¶ 12.)  Plaintiff informed Special Agent Stryd the he wanted to meet with him and tell him
22   about the inmate who wrote the letter.  Agent Stryd informed Plaintiff that it was not protocol for
23   them to meet at that time and that Plaintiff would be contacted when the time was appropriate.
24   (Id. at ¶ 13.)

25        Plaintiff was interviewed four times to promote to the position of Assistant Correctional
26   Food Manager during 2008 and 2009.  Plaintiff did not receive the promotions even though his

27
28   [1] Since Plaintiff fails to state any federal claims entitling him to relief, the Court declines to address Plaintiff's state
     law claims.

1   job performance reflected that he met all expected standards.  No one ever informed Plaintiff that

2   he was unable to receive a promotion while he was the subject of an on-going investigation.  (Id.

3   at ¶ 14.)

4          On March 17, 2010, Plaintiff reported an incident in which he claimed to be the subject of

5   harassment by Defendant Mohktar and requested a lateral transfer claiming he was subject to a

6   hostile work environment due to his reporting the waste of food products.  Plaintiff was informed

7   that he was unable to be transferred while he was the subject of an investigation for misconduct.

8   Plaintiff was also informed that he was the subject of several other on-going investigations of

9   which he was unaware.  (Id.)

10          Plaintiff contacted his Union representative and was informed that the Office of Internal

11   Affairs would be coming to interview him regarding the allegations within the next several

12   weeks.  (Id. at 16.)  On April 8, 2010, Plaintiff was escorted from work by Defendant Schertz and

13   was told that he was under investigation for being overly-familiar with an inmate.  Plaintiff was

14   also informed that he had been observed receiving an unknown substance from an inmate who

15   had pulled something out of her bra and stuck it in his mouth.  Defendants Nitske and Price both

16   stated that they witnessed this incident.  Plaintiff was re-directed to duty in the mailroom pending

17   the investigation of these incidents.  (Id. at ¶ 18.)

18          Plaintiff reported for duty in the mailroom on April 15, 2010, and the following day he

19   was accused of sexual harassment.  (Id.)  Plaintiff was informed on May 4, 2010, that a hearing

20   would occur on May 6, 2010.  Plaintiff hired an attorney for the hearing and after waiting two

21   hours for the hearing it was cancelled.  (Id. at ¶ 19.)  Plaintiff received notices that he had been

22   cleared of the allegations of sexual harassment stemming from his one day assignment to the

23   mailroom; adverse action was recommended for allegations that he was discourteous to an

24   inmate; and allegations for over-familiarity with an inmate were not sustained.  (Id. at ¶¶ 20-22.)

25   Plaintiff subsequently received notice that the adverse action was to be withdrawn and he would

26   be issued a letter of instruction.  (Id. at ¶ 23.)

27          A Skelly hearing was held for which Plaintiff had assistance of counsel.  During the

28   hearing, it was revealed that Plaintiff's supervisors, ACFM Hernandez and Defendant Mohktar

1  had violated procedure by altering an inmate appeal that would have proved Plaintiff's innocence.
2  (Id.)  Plaintiff refused to sign the letter of instruction and submitted a two page rebuttal.  (Id. at ¶
3  24.)

4        Plaintiff received a memorandum on the rape and assault allegations on October 18, 2010.
5  (Id. at ¶ 25.)  A hearing was held on October 19, 2010, which lasted 26 minutes.  The Internal
6  Affairs Investigator did not have a copy of the letter from the inmate.  (Id. at ¶ 12.)

7        On October 27, 2010, Plaintiff received a memorandum that the allegations were not
8  sustained.  Plaintiff contends that the investigations against him were in retaliation for his making
9  whistleblower complaints and for being an African American.  (Id. at ¶¶ 12, 26.)

10       Plaintiff received notice of two more investigatory interviews on November 30, 2010.  A
11 hearing was held on December 7, 2010 which lasted approximately four hours.   Plaintiff
12 submitted evidence and received a memorandum clearing him of some, but not all of the
13 allegations.  (Id. at ¶ 27.)  Plaintiff filed a stress claim and a Worker's Compensation interview
14 occurred in February 2011.  (Id. at ¶ 28.)

15       In July 2011, Plaintiff received a memorandum sustaining some of the allegations from
16 the November 30, 2013 interviews.  Plaintiff contends that there was no evidence for the prison
17 and copies of recorded hearings and documents exonerating him were not placed into evidence.
18 (Id. at ¶ 29.)  Plaintiff was terminated on August 11, 2011.  The termination stated that allegations
19 that he had hugged a correctional officer, had given extra food to inmates, and had been
20 discourteous to staff had been sustain and he was terminated for lying about those infractions.
21 (Id. at ¶ 30.)

22       An Administrative Law Judge ("ALJ") Esther Beltran held hearings on October 27, 2011
23 and November 23, 2011 regarding Plaintiff's denial of unemployment benefits.[2]  ALJ Beltran
24 questioned Plaintiff's employer about why the documents used as a basis for the allegation that
25 Plaintiff lied were not submitted as evidence.   During the second hearing, the employer
26 representative indicated the documents were not submitted because they were confidential.  The

27
28
___
[2] ALJ Beltram heard Plaintiff's appeal from the determination that he was disqualified from receiving unemployment benefits under the Unemployment Insurance Code.  (ECF No. 10 at 39-42.)

1  ALJ found that Plaintiff was not discharged because he had lied, but for other reasons and was

2  entitled to unemployment benefits.  (Id.)

3      Plaintiff appealed the decision to terminate him and a hearing was held during the week of

4  May 7, 2012.  The ALJ sustained the decision to terminate Plaintiff.  Plaintiff contends that the

5  ALJ was misinformed by CDCR representatives and his attorney did not submit all evidence

6  pertaining to him.  (Id. at ¶ 31.)  Plaintiff is seeking injunctive relief and monetary damages.

7      For the reasons discussed below, Plaintiff's second amended complaint fails to state a

8  cognizable claim for relief.  Plaintiff has been provided with two opportunities to amend his

9  complaint and has failed to correct the deficiencies in his claims.  The Court finds that Plaintiff is

10  unable to correct the deficiencies in his claim to state a cognizable claim for relief; and therefore,

11  it would be futile to grant leave to amend.

12                                          **IV.**

13                                      **DISCUSSION**

14      **A.      Civil Rights Claims**

15      Plaintiff alleges that Defendants retaliated against him in violation of the First

16  Amendment and denied him due process in violation of the Fourteenth Amendment

17          1.      First Amendment Retaliation

18      A state may not condition employment on a basis that infringes on an employee's

19  constitutionally protected interest in freedom of speech.  Connick v. Myers, 461 U.S. 138, 143

20  (1983).  A claim for retaliation in violation of the First Amendment has five elements: "1)

21  whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a

22  private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial

23  or motivating factor in the adverse employment action; (4) whether the state had an adequate

24  justification for treating the employee differently from other members of the general public; and

25  (5) whether the state would have taken the adverse employment action even absent the protected

26  speech."  Dowell v. Contra Costa County, 928 F.Supp.2d 1137, 1147 (N.D. Cal. 2013) (quoting

27  Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir.2009)).

28      The First Amendment protects that speech of a public employee where it addresses "a

6

matter of legitimate public concern."  Coszalter v. City of Salem, 320 F.3d 973 (9th Cir. 2003).
First Amendment protections do not extend to a public employee's statements made pursuant to
his official duties.  Dowell, 928 F.Supp.2d at 1148.  The question of the scope and content of the
employee's job responsibilities is a question of fact, but the constitutional significance of the facts
as found is a question of law.  Dowell, 928 F.Supp.2d at 1148-49 (quoting Eng, 552 F.3d at
1071).

Plaintiff contends that he was retaliated against for speaking out against improper
practices that were occurring in the Central Kitchen, however, based on the allegations in the
complaint, the investigation of Plaintiff was initiated due to an inmate accusing Plaintiff of raping
and assaulting her.  Further, upon reviewing Plaintiff's memorandums reporting "issues" in the
kitchen, as a supervising correctional cook, these memorandums were created in the performance
of Plaintiff's official duties as a supervising correctional cook to report incidents that occurred
during his shift.  (ECF No. 10 at 17, 18, 21, 22, 23-24, 25, 26, 27.)  Accordingly, these statements
are not protected speech; and Plaintiff fails to state a cognizable claim for retaliation in violation
of the First Amendment.

2.      Fourteenth Amendment Due Process

Plaintiff alleges that he was terminated from his employment without due process of law.
There are two distinct elements of a procedural due process claim: 1) that the plaintiff has been
deprived of a constitutionally protected liberty or property interest, and 2) the deprivation was
without adequate procedural protections.  Brewster v. Board of Educ., 149 F.3d 971, 982 (9th Cir.
1998); Walls v. Central Contra Costa Transit Authority, 653 F.3d 963, 967-68 (9th Cir. 2011).
"[G]overnment employees can have a protected property interest in their continued employment
if they have a legitimate claim to tenure or if the terms of the employment make it clear that the
employee can be fired only for cause."  Blantz v. California Dept. of Corrections and
Rehabilitation, 727 F.3d 917, 922 (9th Cir. 2013).  Permanent state employees in California
"possess a property interest in their job, guaranteed by statute, with attendant due process rights in
their continued employment."  Freitag v. Ayers, 468 F.3d 528, 548 (9th Cir. 2006).

Once it has been established that an employee has a property right in his continued

employment, it must be decided what process he is due prior to being deprived of the interest. "When a public employee is terminated for cause, he is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.  An employee is only entitled to a very limited hearing prior to his termination, which need not be elaborate."  Hufford v. McEnaney, 249 F.3d 1142, 1151 (9th Cir. 2001) (internal punctuation and citations omitted); Walls, 653 F.3d at 968.

As Plaintiff was previously informed, to the extent that he is attempting to state a claim based upon the amount of time it took for the investigation to be completed, he fails to state a claim.  Plaintiff's second amended complaint demonstrates that the allegation that Plaintiff raped an inmate was investigated and during the investigation allegations that Plaintiff had engaged in other misconduct arose.  Prior to each hearing, Plaintiff received notice of the hearings, the hearings were held, Plaintiff was represented by counsel, and was given the opportunity to address the allegations against him prior to being terminated.

Furthermore, after Plaintiff was terminated he was provided with two opportunities to raise his claims before an administrative law judge.  Those hearings were held and Plaintiff was represented by counsel and provided with the opportunity to challenge the allegations against him.  Plaintiff has failed to state a cognizable claim that he was denied due process in violation of the Fourteenth Amendment.

**B.**     **Title VII Claims**

1.     Disparate Treatment under 42 U.S.C. § 2000e-2(a)

Plaintiff contends that he was subjected to disparate treatment due to his race.  The Civil Rights Act of 1964 prohibits discrimination based upon an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a).  A disparate treatment claim requires the plaintiff to prove that the employer acted with a discriminary intent or motive in taking the adverse employment action.  Ricci v. DeStefano, 577 U.S. 557, 578 (2009); Wood v. City of San Diego, 678 F.3d 1075, 1081 (9th Cir. 2012).

A prima facie case requires a showing that "(1) [the employee] is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and

8

1   (4) similarly situated individuals outside his protected class were treated more favorably, or other

2   circumstances surrounding the adverse employment action give rise to an inference of

3   discrimination."  Petersen v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004).  To prevail

4   on a disparate treatment claim, a plaintiff must "establish that his job performance was

5   satisfactory and provide evidence, either direct or circumstantial, to support a reasonable

6   inference that his termination was discriminatory."  Id.

7          As Plaintiff was previously informed, his complaint fails to allege facts to give rise to an

8   inference that he was discriminated against because of his race.  While Plaintiff claims that he

9   was the only African American employee who was investigated due to the allegations contained

10  in the inmate letter, he was the only employee who was accused of raping the inmate.  The

11  decision to investigation the allegation of rape and not to investigate the allegation that another

12  officer assaulted the inmate in front of two other correctional officers does not lead to the

13  inference that the investigation was due to Plaintiff's race, rather than to the more serious nature

14  of the allegations made against Plaintiff.

15         Further, Plaintiff's complaint states that he was informed his termination was due to the

16  investigation uncovering several substantiated incidents of misconduct and that Plaintiff had lied

17  during the investigation.  There are no facts alleged that lead to the inference that any adverse

18  employment action was taken against Plaintiff due to his race.  Plaintiff fails to state a claim for

19  disparate treatment.

20         2.      Retaliation Under to 42 U.S.C. § 2000e-3(a)

21         The Civil Rights Act of 1964 prohibits an employer from retaliating against an employee

22  "because he has opposed any practice made an unlawful employment practice" by Title VII.  42

23  U.S.C. § 2000e-3(a).  Section 2000e-3 protects an employee from being discriminated against

24  because the employee opposed what he reasonably believes to be an unlawful practice.  Nelson v.

25  Pima Community College, 83 F.3d 1075, 1082 (9th Cir. 1996).  However, these provisions relate

26  to discrimination against an employee for engaging in protected activity to address

27  discrimination.  Lalau v. City and County of Honolulu, 938 F.Supp.2d 1000, 1017 (D. Hawaii

28  2013).

Here, Plaintiff alleges that he was retaliated against for reporting unnecessary labor costs, food waste, spoilage and contamination of food in the prison.  As Plaintiff was previously informed the alleged violations which he reported are not practices made unlawful by Title VII and therefore, even if he had been retaliated against for reporting the violations, the retaliation would not be in violation of 42 U.S.C. § 2000e-3.  Plaintiff has failed to plead that he reported any employment practice that was unlawful under Title VII, therefore, Plaintiff fails to state a cognizable claim for a violation of 42 U.S.C. § 2000e-3.

### C.      Conspiracy

Plaintiff alleges that the defendants conspired against him as a result of his whistleblowing and race.  A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'"  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)).   "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'"  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

To state a conspiracy claim under section 1985(3), a plaintiff must allege sufficient facts to show "a deprivation of a right motived by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'"  RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002) (quoting Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992)).   "'The conspiracy . . . must aim at a deprivation of the equal enjoyment of rights secured by the law to all.'"  Orin v. Barclay, 272 F.3d 1207, 1217 (9th Cir. 2001) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790 (1971)) (emphasis omitted).

Although, for pleading purposes, the Court accepts as true the allegations in the complaint, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  Twombly, 127 S. Ct. at 1965 (citations omitted).  A plaintiff must set

1   forth "the grounds of his entitlement to relief[,]" which "requires more than labels and

2   conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. at 1964-65

3   (internal quotations and citations omitted).   Plaintiff's second amended complaint fails to allege

4   facts indicating a conspiracy or any act in furtherance of the conspiracy which are required

5   elements.  Plaintiff has not alleged any facts supporting the existence of a conspiracy between

6   Defendants and the conclusory allegations that Defendants conspired against Plaintiff do not state

7   a cognizable claim.

8   **V.**

9   **CONCLUSION AND RECOMMENDATION**

10       Plaintiff's complaint fails to state a claim upon which relief may be granted under section

11   1983, 42 U.S.C. 2000e-2(a), or 42 U.S.C. § 2000e-3(a).  Under Rule 15(a) of the Federal Rules of

12   Civil Procedure, leave to amend 'shall be freely given when justice so requires,'" Fed. R. Civ. P.

13   15(a), and "[l]eave to amend should be granted if it appears at all possible that the plaintiff can

14   correct the defect," Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal citations

15   omitted).  However, in this instance, Plaintiff has been provided with three opportunities to file a

16   complaint with guidance from the Court and has been unable to cure the deficiencies identified.

17   The Court finds that the deficiencies outlined above are not capable of being cured by

18   amendment, and therefore leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii);

19   Noll v. Carlson, 809 F. 2d 1446, 1448-49 (9th Cir. 1987).

20       Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed, with

21   prejudice, based on Plaintiff's failure to state a claim upon which relief may be granted.

22       This findings and recommendation is submitted to the district judge assigned to this

23   action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen

24   (14) days of service of this recommendation, Plaintiff may file written objections to this findings

25   and recommendation with the Court.  Such a document should be captioned "Objections to

26   Magistrate Judge's Findings and Recommendation."  The district judge will review the magistrate

27   judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C).  Plaintiff is advised

28   that failure to file objections within the specified time may waive the right to appeal the district

1 | judge's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.  1991).

2

3 | IT IS SO ORDERED.

4 |     Dated:   **January 8, 2014**

                                      UNITED STATES MAGISTRATE JUDGE